# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **JASPER MULDROW,** <br> **Guardian on behalf of Jasper Muldrow, III** <br> c/o Friedman & Gilbert <br> 50 Public Square, Suite 1900 <br> Cleveland, Ohio 44113, <br><br>      Plaintiff, <br><br> -vs- <br><br> **CUYAHOGA COUNTY,** <br> c/o Cuyahoga County Prosecutor's Office <br> The Justice Center, Courts Tower <br> 1200 Ontario Street, 8th Floor <br> Cleveland, Ohio 44113 <br> **CORRECTIONAL OFFICER CHARLES ENOCH** <br> 1404 Argonne Road <br> South Euclid, OH 44121 <br> **CORRECTIONAL OFFICER KENNETH BRODNICK,** <br> **CORPORAL ALLEN COATOAM,** <br> **CORPORAL WILLIAM WINKLE,** <br> **CORRECTIONAL OFFICER JASON JOZWIAK,** <br> c/o Cuyahoga County Prosecutor's Office <br> The Justice Center, Courts Tower <br> 1200 Ontario Street, 8th Floor <br> Cleveland, Ohio 44113 <br><br>      Defendants. | CASE NO. <br><br> JUDGE <br><br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff, Jasper Muldrow, is the father and guardian of Jasper Muldrow, III, the ward, and is bringing this lawsuit on behalf of the ward, against Defendants Cuyahoga County, Correctional Officers Charles Enoch, Kenneth Brodnick, Allen Coatoam, William Winkle and Jason Jozwiak, and alleges as follows:

### INTRODUCTION

1.      This is a civil rights action. On November 12, 2018, Defendants Correctional Officers Enoch, Kenneth Brodnick, Allen Coatoam, William Winkle and Jason Jozwiak brutally beat Plaintiff's ward, Jasper Muldrow, III, an inmate at the Cuyahoga County Jail (CCCC) while housed as a patient in the mental health unit.

2.      Defendants' unprovoked and unnecessary actions constituted excessive force against Plaintiff's ward, in violation of his constitutional right to be free from excessive force inflicted by correctional officers acting under color of law.

3.      Defendant Cuyahoga County is also liable for the ward's trauma, injuries, and damages. Cuyahoga County's unconstitutional policies, practices, and customs in place at the time of this incident are the moving force behind the misconduct committed by Defendants Enoch, Brodnick, Coatoam, William Winkle and Jason Jozwiak.

4.      Cuyahoga County Corrections Center (CCCC), during the relevant time frame of these claims, and currently, operates under a state of constant crisis, endangering the health and safety of detainees/inmates and staff alike on a daily basis.  CCCC is underfunded, understaffed, poorly administered, and intentionally overcrowded, giving rise to a chaotic and perilous environment inside the jail walls. Detainees and inmates, including Plaintiff Ward, Jasper Muldrow, III, are subjected to ongoing patterns of unconstitutional conditions of confinement within CCCC, including, *inter alia*, the right to be free from unreasonable seizure, pursuant to

2

the Fourth Amendment, and the right to be free from prior restraint and retaliation for lawful speech, pursuant to the First Amendment. Defendants have long been on notice of the horrific conditions and constitutional deprivations occurring daily at CCCC, yet have failed to timely or effectively remedy the deplorable state of affairs.

### JURISDICTION AND VENUE

5.      The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §1983 et seq; the Judicial Code, §§1331 and 1343(a); and the Constitution of the United States.

6.      Supplemental jurisdiction over the related state law claims is invoked pursuant to 28 U.S.C. §1367.

7.      Venue is proper in this District under 28 U.S.C. §1391(b). The parties reside, or, at the time the events took place, resided in this judicial district, and the events giving rise to Plaintiff's claim also occurred in this judicial district.

### PARTIES

8.      Plaintiff and Plaintiff's ward, Justin Muldrow, III, at all times relevant to the allegations made in the complaint, resided in Cuyahoga County, State of Ohio.

9.      Defendant Correctional Officers Charles Enoch, Kenneth Brodnick, Allen Coatoam, William Winkle and Jason Jozwiak were, at all times relevant to the allegations made in this complaint, duly appointed correctional officers employed by Cuyahoga County, acting within the scope of their employment and under the color of state law. They are sued in their individual capacities.

10.     Defendant Cuyahoga County is a municipal corporation, duly incorporated under the laws of the State of Ohio and located in this judicial district, is the employer and principal of

Defendants Enoch, Brodnick, Coatoam, William Winkle and Jason Jozwiak and is responsible for the training, supervision, policies, practices, and customs of the CCCC.

**FACTS**

11.    Jasper Muldrow, III, the ward, is a 43-year-old African American man. On November 12, 2018, he was in custody at the CCCC, and housed in the mental health unit of the jail because of his chronic and severe mental health issues.

12.    Subsequently, Jasper Muldrow, III was found not competent to stand trial because of his severe mental disability, and per court order was placed and continues to be a patient at North Coast Behavioral Health Care Hospital.

13.    The incident began when Mr. Muldrow was singing in the common area of the mental health unit when Enoch confronted Mr. Muldrow and started arguing with him.

14.    Without any provocation from Mr. Muldrow, Defendant Enoch punched Mr. Muldrow in the face and then continued to punch and attack Mr. Muldrow as he backed off trying to get away from the CO.

15.    During the attack, the other Defendants Brodnick, Coatoam, Winkle and Jozwiak, joined in and participated in the physical attack, using excessive force, including chemical spray, on the face and body of Mr. Muldrow.

16.    Defendant Enoch also used an unauthorized choke hold during the course of the assault against Mr. Muldrow. The other Defendants not only failed to intervene and stop the brutal attack by Enoch, but participated in the assault which caused further injury to Mr. Muldrow.

17.    In a statement made by Defendant Enoch, he denied the attack and put the blame on Mr. Muldrow, claiming it was Muldrow who threw the first punch. However, the attack was

captured on surveillance video which clearly shows that Mr. Muldrow did not strike Defendant Enoch prior to being attacked. See  HTTPS://YOUTU.BE/LTY4UX0CSL8?T=32

18.     Defendant Enoch admitted his wrongful and unjustified conduct in the unprovoked attack of Mr. Muldrow after he entered a plea of guilty to the criminal offense of assault and further apologized to Mr. Muldrow the sentencing hearing. The Court sentenced Defendant to community control sanctions.

19.     In violating Muldrow's constitutional rights, Defendants Enoch, Brodnick, Coatoam, Winkle and Jozwiak engaged in willful, wanton, reckless, and/or negligent conduct. Defendants' conduct was the direct, actual, and proximate cause of Muldrow's injuries.

20.     Defendants acted under color of law and deprived Plaintiff of federally protected rights, in violation of Title 42 U.S.C. §1983.

21.     As a direct and proximate result of Defendants' conduct, Mr. Muldrow sustained physical and psychological injuries, including, *inter alia*, a fractured arm, severe pain, fear, humiliation, emotional distress and disability.  The injuries suffered by Mr. Muldrow were all preventable had Defendants not engaged in illegal conduct in violation of Mr. Muldrow's fundamental rights. Actions were without probable cause, unjustified, and objectively unreasonable.

**Unconstitutional Conditions at the Cuyahoga County Corrections Center**

22.     Defendant Cuyahoga County ("the County") is responsible for the Cuyahoga County Corrections Center (CCCC), including the care and treatment of detainees/inmates— like Jasper Muldrow, III—in custody therein. The County is required to ensure that the policies, practices, and customs of the CCCC comply with federal and Ohio law concerning the treatment of persons in custody.

23.     Moreover, in connection to this particular incident the County failed to provide specialized training to Defendant Enoch, as well as the other named individual Defendants prior to being assigned to the mental health unit. The failure to train a correctional officer on how to deal with severely disabled mental health inmates housed in said unit constitutes deliberate indifference by the County, and the jail supervisors. Such failure led to Enoch, and the other named Defendants, to act on emotions, anger and frustration, rather than following appropriate and specific protocols, to guide their actions in confronting Mr. Muldrow. To assign a CO in such a position without such specialized training is deliberately indifferent to the care and safety of mentally ill inmates and was the moving force in causing the constitutional violation.

24.     Also, unconstitutional and deplorable conditions in the CCCC are a historic problem. Defendants have long been on notice of – and have even taken action to worsen – these conditions, and have long been on notice of the incompetent supervision and management of the CCCC.

25.     The CCCC has been subjected to federal court monitoring at least twice in response to unconstitutional conditions of confinement within the jail.

26.     The County's track record of operating the CCCC demonstrates continued indifference and longstanding, systematically unconstitutional operational procedures.

27.     CCCC, during the relevant time of the incident herein, as well as today, operates in complete crisis. Upon information and belief, at least nine people died in CCCC during the year 2018 the past year, and over 55 people attempted suicide while in CCCC custody in 2018. The rates of in-custody deaths, assaults by correctional officers, deprivations of basic human rights, and safety of detainees/inmates and staff alike have all reached emergency levels.

28.     Detainees/inmates and their families have raised innumerable concerns and complaints about deplorable conditions. Some CCCC staff have quit their jobs in protest. Other stakeholders, including judges in the Cleveland Municipal Court and Cuyahoga Common Pleas Court, have expressed serious concern over jail conditions and the manner in which the facility is being operated.

29.     As of November, 2017, the Ohio Department of Rehabilitation and Corrections' (ODRC) Bureau of Adult Detention inspection found CCCC was not in compliance with Ohio's Minimum Standards for Adult Detention Center.

30.     Likewise, the Pretrial Justice Institute (PJI) found in 2017 that CCCC was overcrowded. The PJI report found that on average, CCCC has been operating at over 100% capacity for four of the past five years. (*See* Pretrial Justice Institute, "Enhancing Pretrial Justice in Cuyahoga County: Results from a Jail Population Analysis and Judicial Feedback," September 2017, available at

https://university.pretrial.org/HigherLogic/System/DownloadDocumentFile.ashx?DocumentFileKey=c4587ef2-8416-18fe-e19d-b188d3691e93&forceDialog=0.)

31.     Further, the Cuyahoga County Bail Task Force found in March 2018 that inmates/detainees remain in CCCC custody for unnecessarily long periods of time.

32.     The County has long been on notice of overcrowding and medical and mental health issues—since at least 2017—but has not remedied this critical problem and instead has increased overcrowding.

33.     Further, the United States Marshal's Service (USMS) issued a report on November 21, 2018 condemning the conditions in the CCCC. This report documented numerous failings discovered in USMS's thorough review of conditions, policies, and practices

at CCCC. The report concluded that conditions in CCCC are inhumane and dangerous for both inmates/detainees and corrections officers.

34.     The USMS Report findings include, but are not limited to:

a.      Failure to utilize generally-accepted best practices for Use-of-Force teams to ensure staff and detainee/inmate safety;

b.      Failure to tag and label as evidence all video tapes involving use-of-force incidents;

c.      Failure to require all persons involved in use-of-force incidents to complete written reports; and

d.      Failure to train annually on safety/security/fire/medical procedures and supervision of offenders.

35.     The USMS report found that CCCC is severely overcrowded and identified 96 correction officers' vacancies, indicating severe understaffing. The report states, "as a result of the high vacancy rate and excessive staff call outs, the CCCCs daily operation is greatly impacted regarding provision for detainees'/inmates' basic needs."

36.     Critically, over 100 detainee/inmate interviews conducted by the USMS review team revealed "strong and consistent allegations of brutality, use of force punishment, and cruel treatment of the Security Response Team (SRT)," who dress in para-military uniforms.

37.     These reports obtained by USMS are consistent with Jasper Muldrow, III's experiences at the hands of the Defendants in this case.

38.     The USMS review team also observed SRT officers verbally abusing and aggressively interacting with detainees/inmates, and observed aggressive conduct and abusive, explicit language directed at detainees/inmates by SRT members.

39.     A strong threat of retaliation faces Plaintiff and anyone else in the custody of Cuyahoga County who comes forward with information about the conditions at CCCC.

40.     SRT officers escorting detainees/inmates to interviews with the USMS review team called those detainees/inmates "snitches." The behavior was so threatening and dangerous that the USMS review team requested up to ten detainees/inmates be removed from CCCC custody for fear of retaliation and detainee/inmate safety.

41.     USMS's documentation of correctional officers threatening detainees/inmates for exposing the conditions in CCCC is consistent with the experience of Jasper Muldrow, III.

42.     Further, as evidenced in the USMS report and inmates' and detainees' accounts—including Jasper Muldrow, III—CCCC is in violation of the Ohio minimum jail standards, as defined in Ohio Admin. Code § 5120:1-8. These violations include, but are not limited to:

a.     Failure to limit use of force to "the amount of force necessary to control a given situation," where "in no event is physical force used as punishment";

b.     Failure to ensure that disciplinary measures do not include corporal punishment or withholding food;

c.     Failure to ensure no retaliation by staff for inmate grievances.

43.     Compounding these violations, CCCC's grievance system is broken, leaving detainees/inmates—including Jasper Muldrow, III—with no functional avenue to seek redress of their serious needs and legitimate complaints concerning conditions of confinement and rights violations, depriving them of due process. Detainees'/inmates' complaints, kites, and grievances are not delivered and/or go unanswered. Their complaints remain unaddressed, and their suffering continues unabated.

9

**FIRST CLAIM FOR RELIEF:**
**42 U.S.C. § 1983 Claim for Unconstitutional Seizure**
**against Defendants Enoch, Brodnick, Coatoam, William Winkle and Jason Jozwiak**

44.     All of the foregoing paragraphs are incorporated as though fully set forth here.

45.     The actions of Defendants Enoch, Brodnick, Coatoam, Winkle and Jozwiak violated Jasper Muldrow, III's rights under the Fourth Amendment to the United States Constitution to be secure in his person against unreasonable seizure, and his right to due process under the Fourteenth Amendment to the United States Constitution, and caused the injuries alleged in this complaint.

46.     Jasper Muldrow, III, was subjected to the use of excessive force in violation of his Fourth Amendment rights.

47.     Defendants further had the duty and opportunity to intervene to protect Muldrow and to prevent the use of excessive force against him, yet they did nothing to assist him or prevent the brutality meted out by fellow officers.

48.     Defendants' conduct during and after this attack constitutes cruel and unusual punishment in violation of Muldrow's constitutional rights.

49.     Defendants' actions as alleged in this count of the complaint were the direct and proximate cause of the constitutional violations set forth above and of Muldrow's injuries.

50.     Defendants are jointly and severally liable for this conduct.

**SECOND CLAIM FOR RELIEF:**
**42 U.S.C. § 1983 *Monell* Claim**
**against Defendant Cuyahoga County**

51.     All of the foregoing paragraphs are incorporated as though fully set forth here.

52.     The actions of the individual Defendants, as alleged above, were taken pursuant to one or more interrelated de facto policies (even if not official written edicts), practices and/or

customs of civil rights violations and unconstitutional practices of Defendant Cuyahoga County.

53. Defendant Cuyahoga County, at all times relevant herein, approved, authorized, and acquiesced in the unlawful and unconstitutional conduct of its respective employees and/or agents and consequently are directly liable for the acts of those agents, pursuant to 42 U.S.C. § 1983.

54. Despite the facts and circumstances surrounding these uses of force which clearly demonstrate that the actions of the individual Defendants were unreasonable and unlawful, upon information and belief, Cuyahoga County has failed to effectively investigate or impose any discipline on the individual Defendants for their illegal behavior.

55. At all times relevant, the Defendant Cuyahoga County and its CCCC had interrelated de facto policies, practices, and customs which included, *inter alia*:

    a.    the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control their correctional officers who engage in unjustified use of excessive and/or unreasonable force;

    b.    the implementation of unconstitutional policies—whether written or unwritten or official or unofficial, practices, and customs for use of force against inmates/detainees;

    c.    the failure to properly investigate the use of excessive and unreasonable force against CCCC inmates/detainees;

    d.    the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control their correctional officers who engage in unjustified use of excessive and/or unreasonable force via use of restraint chairs;

    e.    the implementation of unconstitutional policies—whether written or unwritten or official or unofficial, practices, and customs for use of restraint chairs against inmates/detainees;

    f.    the failure to properly investigate the use of excessive and unreasonable force via restraint chair use against CCCC inmates/detainees;

    g.    the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control their correctional officers who engage in

threats or retaliation against inmates/detainees;

h.      the implementation of unconstitutional policies—whether written or unwritten or official or unofficial, practices, and customs concerning correctional officer threats and retaliation against inmates/detainees;

i.      the failure to properly investigate correctional officer threats and retaliation against CCCC inmates/detainees;

j.      the code of silence.

56.     The aforementioned de facto policies, practices, and customs of Cuyahoga County include acts of excessive use of force, retaliation, and other willful, wanton, and/or reckless behavior leading to harmful consequences to citizens.

57.     Cuyahoga County has engaged in little or no meaningful investigation or disciplinary action in response to the misconduct of its correctional officers, thereby creating a culture or climate where CCCC correctional staff can escape accountability for their acts of misconduct with impunity.

58.     These municipal Defendants were the moving force behind the conduct of the individual Defendants in brutalizing, threatening, and retaliating against Jasper Muldrow, III.

59.     The policy, practice, and custom of a code of silence results in correctional officers refusing to report instances of misconduct of which they are aware, including unlawful searches, seizures, despite their obligation under jail regulations to do so, and also includes correctional officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability or criminal charges, in cases where they or their fellow officers have engaged in misconduct.

60.     The de facto policies, practices and customs of failing to hire, train, supervise, monitor, discipline, transfer, counsel and/or control correctional officer misconduct and the

12

code of silence are interrelated and exacerbate the effects of each other, to institutionalize police lying and immunize correctional officers from discipline.

61.     That the unconstitutional actions of the Defendants as alleged in this complaint were part and parcel of a widespread CCCC policy, practice, and custom is further established by the involvement in, and ratification of, these acts by supervisors and County policymakers, as well as by a wide range of other officials, officers, and divisions of the CCCC.

62.     The policies, practices and/or customs alleged in this complaint, separately and together, are the proximate cause of the injuries to Jasper Muldrow, III because Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, and that they were immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

63.     But for the belief that they would be protected—both by fellow officers and by Cuyahoga County—from serious consequences, the Defendants would not have engaged in the conduct that resulted in the injuries to Jasper Muldrow, III.

64.     The interrelated policies, practices and customs, as alleged in this complaint, individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendants to commit the acts alleged in this complaint against Muldrow.

65.     Cuyahoga County therefore acted as the moving force behind and the direct and proximate causes of the violations of Jasper Muldrow, III's constitutional rights and all injuries and damages suffered by him.

### THIRD CLAIM FOR RELIEF
### State Law Claim for Negligence - Willful, Wanton and Reckless Conduct
### against Defendants Enoch, Brodnick, Coatoam, William Winkle and Jason Jozwiak

66.     All of the foregoing paragraphs are incorporated as though fully set forth here.

67.     Defendant Correctional Officers acted negligently when they violated their duty to exercise due care for Jasper Muldrow, III.

68.     Defendants committed the acts alleged in this complaint in a reckless, willful and/or wanton manner while working as correctional officers at the CCCC.

69.     Defendants' misconduct directly and proximately caused the injuries and damages suffered by Jasper Muldrow, III as described above.

70.     Defendants are jointly and severally liable for this conduct.

### FOURTH CLAIM FOR RELIEF
### State Law Claim for Assault and Battery
### against Defendants, Enoch, Brodnick, Coatoam, Winkle and Jozwiak

71.     All of the foregoing paragraphs are incorporated as though fully set forth here.

72.     Defendants' conduct constituted an imminent, harmful, and offensive touching and constituted a harmful and offensive touching, made knowingly and without legal justification.

73.     Defendants' misconduct directly and proximately caused the injuries and damages suffered by Jasper Muldrow, III, as described above.

74.     Defendants are jointly and severally liable for this conduct.

### PRAYER FOR RELIEF

Plaintiff demands that judgment be entered in his favor on all counts and prays the Court to award the following relief:

a.      An award of actual and/or compensatory damages against all Defendants in an amount to be determined at trial that will fully and fairly compensate Jasper Muldrow, III, for the injuries and damages he suffered;

b.      An award of punitive damages against Defendants Enoch, Brodnick, Coatoam, Winkle, and Jozwiak in an amount to be determined at trial that will serve to adequately punish and deter the acts and omissions alleged

in this complaint;

c.      Issue an injunction requiring Defendants to immediately refrain from the use of excessive force and retaliation against Plaintiff's ward, Jasper Muldrow, III;

d.      Issue an injunction requiring Defendant Cuyahoga County to immediately discipline the Correctional Officer Defendants for their use of excessive force and retaliation against Plaintiff's ward, Jasper Muldrow, III;

e.      Issue an injunction requiring Defendants and their agents, employees, officials, and all persons acting in concert with them under color of state law, to develop and implement, as soon as practicable, a plan to eliminate the substantial risk of serious harm suffered by Plaintiff's ward, Jasper Muldrow, III and all other inmates/detainees in the CCCC as a result of Defendant Cuyahoga County's policies, practices, customs, and failures to train and supervise correctional staff, as set forth herein;

f.      An award of attorneys' fees and the costs of this action pursuant to 42 U.S.C. Section 1988; and

g.      All such other relief to which Plaintiff is entitled and/or this Court deems equitable.

### *TRIAL BY JURY ON ALL CLAIMS FOR RELIEF HEREBY DEMANDED.*

/s/ Terry H. Gilbert
TERRY H. GILBERT (0021948)
SARAH GELSOMINO (0084340)
FRIEDMAN & GILBERT
50 Public Square, Suite 1900
Cleveland, OH 44113-2205
P: (216) 241-1430
F: (216) 621-0427
E-mail: tgilbert@f-glaw.com
      sgelsomino@f-glaw.com

Counsel for Plaintiff